United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EMERY MILLIGAN,

    Petitioner,

    v.

TOM CAREY, Warden,

    Respondent.

No. C 04-0944 PJH (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court; petitioner has elected not to file an optional traverse. The case is ready for decision.

**BACKGROUND**

Petitioner was convicted by a jury of second degree murder and discharging a firearm causing serious bodily injury. He was sentenced to prison for forty years to life. The California Court of Appeal affirmed the conviction and sentence and the California Supreme Court denied petitioner's application for review.

As grounds for habeas relief, petitioner asserts that: (1) His due process rights were violated because the trial court refused to instruct the jury on antecedent threats; (2) the trial court erred in using CALJIC 17.41.1, instructing the jury to report any juror who refused to deliberate or follow the law; (3) defense counsel was ineffective in not pursuing a diminished capacity defense and not requesting a competency hearing; and (4) the prosecutor committed misconduct by asking a question on cross-examination which was

not supported by any evidence, and in suggesting in closing argument that petitioner manufactured a defense.

Petitioner does not dispute the following facts, which are taken from the opinion of the California Court of Appeal.

> At the time of the murder appellant, a veteran of the United States Army and Marines with extensive overseas combat experience, was 50 years old, five feet four or five inches tall, and a chronic drug abuser. Since July 1996 he had been enrolled in a methadone assistance program run by the Veteran's Administration. When tested for illicit drug use under the program, he never tested clean.
>
> Carolyn Ballard lived in a two-story home in East Oakland with her daughter Felicia, Frenchie, whom she considered as her brother-in-law, and other relatives. Frenchie was six feet four inches tall, weighed 170 pounds and was pretty well built. He taught neighborhood kids karate.
>
> On the evening of August 4, 2000, Ballard and others were "partying" at the house with rock cocaine. The next morning appellant came by the house and offered to sell a rock of cocaine to Angel, a 17-year-old girl who was staying there temporarily. Felicia said he could not sell drugs in the house, they argued and appellant kicked her. Appellant also argued with Gus, another male at the house, threatening to shoot him. Appellant's tone was very aggressive, angry and violent.
>
> Appellant left for a while with Nina Wiley to look for someone. Upon returning, appellant smoked crack cocaine in Ballard's second floor bedroom. After taking a hit he became angrier, more aggressive, edgy, irritated, and hostile. Angel and appellant got into a loud, heated argument over a missing pair of tweezers. They were cursing; appellant threatened Angel.
>
> Frenchie went up to the bedroom and ordered them to stop the cursing and arguing because there was a child downstairs. Angel apologized. Frenchie told appellant he would have to leave. Appellant responded he would do "what the hell" he wanted, and would leave only if Ballard told him to. Frenchie tried to get appellant but others came between them. Frenchie said: "The only reason I'm not breaking your neck right now is there are people keeping me from getting to you."
>
> Appellant jumped up on the bed, took out his gun, and said: "You don't think I'll shoot your mother fuckin[g] ass? I'll shoot your ass." Frenchie dared him to shoot. Ballard and others begged appellant not to shoot; she asked him to leave. Everyone started walking down the stairs. Appellant was backing down the stairs, gun in hand; Frenchie followed. Appellant fired the gun into the stairs, asking Frenchie, "You want some of this?" Frenchie continued escorting appellant downstairs, heading toward the door. Appellant held the gun at his side; Frenchie was close behind.
>
> When appellant reached the dining room he fired the gun toward the floor; Frenchie moved a little to the left and said, "the mother fucker shot at me." Appellant, a trained marksmanship instructor, fired again and hit Frenchie in the leg. There was struggling over the gun. A couple of men started throwing

2

appellant around. Appellant begged them to stop so he could help Frenchie. At some point appellant also said he did not mean to do it.

Appellant went upstairs to get his keys, then took off in his van with Angel Appellant headed for home; he did not summon the police or an ambulance. Others at the house administered to Frenchie and called for help. By the time police officers arrived at the scene, Frenchie could not respond; he quickly bled to death.

Officer Shannon picked up a call about the shooting, spotted the van and started following it. Appellant was circling the block of his residence. Once backup officers arrived, they pulled him over. Appellant told the arresting officers he had been robbed and just grabbed a gun. When interviewed by homicide investigators, appellant first claimed that someone else shot Frenchie. When the investigators challenged this story appellant claimed he shot Frenchie in self-defense.

Ex. A at 1-3.

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-409 (2001), while the second prong applies to decisions based on factual determinations. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-413. A state court decision is an "unreasonable application of Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but

3

"unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-806 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir. 2000).

## DISCUSSION

*1.   Antecedent Threats*

Petitioner contends that his due process rights were violated because the trial court refused to give a jury instruction on antecedent threats. The standard jury instruction in California regarding antecedent threats reads:

> Evidence has been presented that on [a] prior occasion[s] the alleged victim [threatened] [or] [assaulted] [or participated in an assault or threat of physical harm upon] the defendant. If you find that this evidence is true, you may consider that evidence on the issue of whether the defendant actually and reasonably believed that [his] [her] life or physical safety was endangered at the time of the commission of the alleged crime.
> In addition, a person whose life or safety has been previously threatened, or assaulted by [another] [others], is justified in acting more quickly and taking harsher measures for self protection from an assault by [that person] [those persons], than would a person who had not received threats from or previously been assaulted by the same person [or persons].

Committee on Standard Jury Instructions, Criminal, *California Jury Instructions – Criminal*, 198-199 (7th ed. 2003).

In this case petitioner asserted that he acted in self-defense. The California Court of Appeal has held that when there is evidence of antecedent threats by the victim against the

4

defendant it is reversible error to refuse to give a pinpoint instruction regarding the impact of such threats on the reasonableness of defendant's actions. *People v. Torres*, 94 Cal. App. 2d 146, 152-153 (1949). This position was subsequently confirmed by the California Supreme Court. *See People v. Moore*, 43 Cal. 2d 517, 521-522 (1954). This rule was deemed necessary because the standard instructions on self-defense refer to the defendant's fear of "imminent" serious bodily injury or death and the "immediate" circumstances of the event, which led the court to fear that a jury might believe it could not consider much earlier events in determining whether a reasonable person in the shoes of defendant would have believed in the need for self-defense. *Torres*, 94 Cal. App. 2d at 153. In short, the instruction relates not to events which were part of the crime, but to those which were temporally removed from it.

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Id.* A state trial court's refusal to give an instruction does not alone raise a ground cognizable in a federal habeas corpus proceeding. *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988).

Virtually all of the events which petitioner contends show the need for the instruction were part of the connected events leading to the crime, that is, were not the sort of threats that would support giving the instruction. For instance, moments prior the shooting, the victim told petitioner that he was going to "kick [his] ass," ex. E at 860, and that "[t]he only reason I'm not breaking your neck right now is there are people keeping me from getting to you." *Id.* at 71. Petitioner's defense was that the shooting was triggered by these immediate threats, not the antecedent threats. The trial court instructed the jury on self-defense (CALJIC No. 5.12), and on threats and menaces (CALJIC No. 4.40). The jury was instructed to consider the surrounding circumstances and was properly instructed on the relevance of the victim's current threats. *Id.* at 1053, 1063. These instructions adequately

addressed the threats the victim made moments before petitioner shot him and thus allowed the jury to consider petitioner's defense.

There was evidence of one genuine antecedent threat. Ballard testified that before the day of the shooting the victim told petitioner that "he would snatch his head off his shoulder, shove it up his ass, and his eyes would watch his heart take its last beat." *Id.* at 342, 344. However, petitioner testified to the contrary, saying that the victim never threatened him before the day of the shooting. *Id.* at 927. And petitioner also testified that previous events did not make him afraid of the victim at the time of the crime and that the victim never did anything wrong to him before the day of the shooting. *Id.* In short, there was no evidence that the purported prior threat, even if it occurred, had any impact on the petitioner.

Given petitioner's testimony, including his denial that there was an antecedent threat, the trial court's refusal to give an antecedent threat instruction could not have rendered the trial fundamentally unfair. The trial court's failure to give an antecedent threats instruction thus did not violate petitioner's due process rights. Because there was no constitutional violation, the state appellate courts' rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established United States Supreme Court authority.

2.  *Jury Instruction CALJIC 17.41.1*

Petitioner claims that using CALJIC 17.41.1 violated his right to due process and trial by an impartial jury by inhibiting jury deliberation and invading jury privacy. CALJIC 17.41.1 provides:

> The integrity of a trial requires that jurors, at all times during their deliberations, conduct themselves as required by these instructions. Accordingly, should it occur that any juror refuses to deliberate or expresses an intention to disregard the law or to decide the case based on [penalty or punishment, or] any [other] improper basis, it is the obligation of the other jurors to immediately advise the Court of the situation.

Committee on Standard Jury Instructions, Criminal, *California Jury Instructions – Criminal*, 217 (6th ed. Supp. 1998).

The Ninth Circuit has held that there is no "clearly established United States Supreme Court precedent" which establishes that an anti-nullification instruction such as CALJIC 17.41.1 violates a constitutional right. *Brewer v. Hall*, 378 F.3d 952, 955-956 (9th Cir. 2004). A California appellate court's rejection of a challenge to 17.41.1 therefore cannot be be contrary to, or an unreasonable application of, clearly established Supreme Court authority. See *id.* at 956. In light of *Brewer*, the trial court's instruction pursuant to CALJIC 17.41.1 cannot be the basis for federal habeas relief.[1]

*3.    Ineffective Assistance of Counsel*

Two of petitioner's claims are for ineffective assistance of trial counsel. A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*

In order to prevail on an ineffective assistance claim, petitioner must establish two things: deficient performance and resulting prejudice. First, an attorney's performance qualifies as deficient if it falls below an "objective standard of reasonableness." *Id.* at 687-688. Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689. Second, prejudice has resulted if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* If the petitioner cannot

---

[1] Juror nullification is not a right under the Constitution, laws or treatises of the United States. *Crease v. McKune*, 189 F.3d 1188, 1194 (10th Cir. 1999) (noting no right to jury nullification in the context of federal habeas review); cf. *United States v. Powell,* 955 F.2d 1206, 1213 (9th Cir. 1992) (federal defendants are not entitled to jury nullification instructions). Any instruction that arguably impeded this non-existent right did not violate the Constitution, laws or treatises of the United States and cannot justify habeas relief.

establish incompetence under the first prong of *Strickland*, then a federal court considering a habeas ineffective assistance of counsel claim does not have to analyze prejudice under the second prong. *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).

### A. Diminished Capacity

Petitioner contends that his counsel was ineffective because he did not "submit into evidence" a letter from the Department of Veterans Affairs saying that the department has found him to be 100% disabled as a result of Post Traumatic Stress Disorder ("PTSD"). Am. Pet. at 12. He contends that this would have shown that he was unable to "form malice and forethought." *Id.*

To whatever extent this is a claim that counsel should have pursued a diminished capacity defense, it is without merit because California abolished the diminished capacity defense in 1981. *See* Cal. Penal Code § 25; *People v. Anderson*, 28 Cal.4th 767, 783 (2002) (diminished capacity defense abolished); *In re Christian S.*, 7 Cal.4th 768, 774-776 (1994) (same). Because the defense is not available under California law, failure to request it could not be ineffective assistance. *See Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005) (trial counsel cannot be found to have been ineffective for failure to make a meritless argument).

If this claim is viewed as a contention that counsel should have introduced the letter in evidence, that evidence would have duplicated testimony about petitioner's military service and PTSD, and the role they played in the shooting, which was elicited by defense counsel. Ex. E at 479-487, 722-772. Defense counsel also argued to the jury that this was a clear case of self-defense and explained that the evidence of PTSD was important because it was relevant to petitioner's state of mind when he was confronted by the threat that produced his defensive action. *Id.* at 980-981. The letter would have been merely cumulative.

For these reasons, the state courts' rejection of petitioner's claim was not contrary to, or an unreasonable application of, clearly established United States Supreme Court authority.

### B. Competence Inquiry

Petitioner contends that his counsel was ineffective for failing to seek a competency hearing. Petitioner argues that he was suffering from PTSD, depression and suicidal thoughts at the time of the trial. Because he was not taking his medication prior to the shooting and resumed taking medication after his arrest, petitioner contends that he was incompetent to stand at trial. He argues that defense counsel failed to properly investigate petitioner's medical records and mental capacity.

A criminal defendant may not be tried unless he is competent and he may not waive his right to counsel or plead guilty unless he does so competently and intelligently. *See Godinez v. Moran*, 509 U.S. 389, 396 (1993). The conviction of a defendant while legally incompetent violates due process. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 510 (9th Cir. 1994). Due process requires a trial court to order a psychiatric evaluation or conduct a competency hearing if the court has a good faith doubt concerning the defendant's competence. *See Cacoperdo*, 37 F.3d at 510; *see also Davis v. Woodford*, 384 F.3d 628, 644 (9th Cir. 2004) (calling a claim of trial court error for failing to conduct a competency hearing a "procedural incompetence claim"). This standard is "clearly established Federal law, as determined by the Supreme Court" within the meaning of 28 U.S.C. § 2254(d)(1). *See Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000) (citing *Pate v. Robinson*, 383 U.S. 375, 385 (1966)).

A good faith doubt about a defendant's competence arises only if there is substantial evidence of incompetence. *See Cacoperdo*, 37 F.3d at 510 (denial of motion for psychiatric evaluation did not render trial fundamentally unfair where petitioner made single conclusory allegation he suffered from mental illness). Petitioner points out that he was mentally ill and was taking medication for that illness, but this is not enough in itself to require the trial court to question his competency. After all, the logical conclusion from this information would be that the mental illness was controlled by the medication, unless there was some evidence from petitioner's conduct that the illness was not under control. Petitioner has pointed to no such evidence.

9

In the absence of evidence sufficient to trigger a good faith doubt about petitioner's competence, the trial court did not violate due process by failing to sua sponte consider competence, and petitioner's counsel's failure to request a competency hearing did not fall below an "objective standard of reasonableness" under prevailing professional norms. Therefore, the state courts' rejection of this claim was not contrary to, nor an unreasonable application of, clearly established Supreme Court authority.

*3. Prosecutorial Misconduct*

Two of petitioner's claims are for prosecutorial misconduct. A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

*A. Improper Question*

Petitioner contends that the prosecutor committed misconduct by asking a question on cross-examination which was not supported by any evidence. The prosecutor asked petitioner: "Didn't you once tell Carolyn Ballard that if you ever shot a man and he lived that the infection would get him because you soaked your bullets in dog feces?" To which the petitioner responded: "No. I never said nothing like that." Ex. E at 895. The prosecutor did not ask this question to Ballard or any other witness, so there was in fact no evidence in the record to support the statement in the question that petitioner had made the "dog feces" remark. Petitioner argues that the prosecutor asked the question to inflame the jury. Ex. B at 8.

Improper questioning of a witness by the prosecutor is not in itself a violation of due process. Rather, the relevant inquiry on habeas is whether the prosecutor's behavior so infected a trial with unfairness as to make the resulting conviction a denial of due process. *Darden*, 477 U.S. at 181.

Here, the jury was instructed to "not assume to be true any insinuation suggested by a question asked a witness. A question is not evidence and may be considered only as it helps you to understand the answer." Ex. D at 234, Ex. E at 1051, (CALJIC No. 1.02). The

10

prosecutor's question was an isolated incident.  Petitioner denied having said that he soaked his bullets in dog feces, and there was no evidence that the victim died from an infection caused by dog feces.

Although the prosecutor's question certainly seems to have been improper, it did not render the entire trial fundamentally unfair.  Because there was no constitutional violation, the state courts' rejection of this claim was not contrary to, or an unreasonable application of, clearly established United States Supreme Court authority.

### *B. Suggesting Petitioner Manufactured Defense*

Petitioner contends that the prosecutor committed misconduct in suggesting to the jury that petitioner and his counsel manufactured the defense.  The prosecutor told the jury that petitioner lied to the police and at trial, and that petitioner tailored his testimony to fit the jury instructions.  Ex. E at 961-962, 974-976, 1028-1029, 1037, 1041-1043.

The jury was instructed that "statements made by the attorney's during the trial are not evidence."  *Id.* at 1050-1051, Ex. D at 234 (CALJIC No. 1.02).  The jurors knew that they were the ultimate judges of credibility and fact.  Ex. E at 1049.  In light of these instructions, the prosecutor's comment did not render the trial fundamentally unfair.  Because there was no constitutional violation, the state courts' rejection of this claim was not contrary to, or an unreasonable application of, clearly established United States Supreme Court authority.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  July 10, 2007.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.04\MILLIGAN944.RUL

11